IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:16-CV-410-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, and the STATE OF NORTH CAROLINA, *ex rel.* STEPHEN GUGENHEIM,<br><br>Plaintiffs,<br><br>v.<br><br>MERIDIAN SENIOR LIVING, LLC, *et. al.*,<br><br>Defendants. | **ORDER** |

This case comes before the court on the motion to compel (D.E. 70) filed by relator Stephen Gugenheim ("relator"). The motion seeks to compel nonparty North Carolina Division of Health Benefits ("DHB"), formerly the Division of Medical Assistance ("DMA"), to produce the documents sought in a subpoena issued by the relator pursuant to Fed. R. Civ. P. 45. The motion to compel is opposed by DHB and has been fully briefed. For the reasons set forth below, the motion will be allowed in part and denied in part.

## I. BACKGROUND

This qui tam case commenced by the relator on behalf of the United States of America and the State of North Carolina asserts claims under the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.* Am. Compl. (D.E. 26) ¶¶ 1, 2, 68, 73. The 49 defendants are largely owners or providers of memory care services at residential assisted living facilities in North Carolina (collectively "defendants"). *Id.* ¶¶ 2, 3, 6. Specifically, the action seeks to recover damages and civil penalties for defendants' alleged submission of false or fraudulent claims submitted to and reimbursed by Medicaid. *Id.* ¶¶ 4, 5,

104, 112. The claims submitted by defendants were for personal care services ("PCS"), which consist of services that an individual requires to perform his activities of daily living, including eating, dressing, bathing, toileting, and mobility. *Id.* ¶¶ 2, 75, 86. The relator alleges that defendants submitted fraudulent claims for PCS provided to Alzheimer's or other memory-impaired adults in defendants' memory care, or special care, units ("SCU"). *Id.* ¶¶ 3, 89.

Prior to issuing the subpoena at issue to DHB, the relator had in-person and written communications with DHB about the documents and information he intended to seek from it. *See, e.g.*, 23 Mar. 2018 letter (D.E. 71-2). After several communications, on 27 June 2018, the relator served the instant subpoena on DHB. Subp. (D.E. 71-1). As set forth in more detail below, the subpoena seeks a number of documents relating to all 49 defendants. *Id.* Following conferral between the relator and DHB, the relator permitted DHB an extension until 16 July 2018 to respond to the subpoena. 29 June 2018 Email (D.E. 74-2); 1 July 2018 Email (D.E. 74-3). On 16 July 2018, DHB served its response and objections to the subpoena. Resp. & Objections (D.E. 71-4). DHB produced no documents with its response and objections. Rel.'s Mem. (D.E. 71) 5. Upon receipt of DHB's response and objections, the parties further conferred about the documents and information sought by the subpoena, but could not come to an agreement. *Id.* at 1-2. The relator thereafter filed his motion to compel.

## II. APPLICABLE LEGAL PRINCIPLES

The Federal Civil Rules enable parties to obtain information by serving requests for discovery, including the issuance of subpoenas. *See generally* Fed. R. Civ. P. 26-37, 45. Rule 34 authorizes a party to issue to nonparties subpoenas for the production of documents. Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). Rule 45 outlines the procedure for issuing subpoenas

2

and directs a nonparty to respond as requested, serve objections, or timely file a motion to quash or modify the subpoena. Fed. R. Civ. P. 45(d)(2)(B), (d)(3); *see also In re Subpoena to Robert Kochan*, No. 5:07-MC-44-BR, 2007 WL 4208555, at *4 (E.D.N.C. 26 Nov. 2007) ("Rule 45 expressly permits a party to issue discovery subpoenas to a nonparty for documents and things in the nonparty's possession, custody, or control.").

"Rule 45 adopts the standard codified in Rule 26" in determining what is discoverable. *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The district court has broad discretion in determining relevance for discovery purposes. *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860 (4th Cir. 2016); *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). The party resisting discovery bears the burden of establishing the legitimacy of its objections. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." (quoting *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010))); *Brey Corp. v. LQ Mgmt., L.L.C.*, No. AW-11-cv-00718-AW, 2012 WL 3127023, at *4 (D. Md. 26 Jul. 2012) ("In order to limit the scope of discovery, the 'party resisting discovery bears the burden of showing why [the discovery requests] should not be

3

granted.'" (*quoting Clere v. GC Servs., L.P.*, No. 3:10-cv-00795, 2011 WL 2181176, at *2 (S.D. W. Va. 3 June 2011))).

Where timely objections are served by a subpoenaed party, the party issuing the subpoena may file a motion to compel production with the court. Fed. R. Civ. P. 45(d)(2)(B). "Upon the filing of a motion to compel, the district court *may* order the nonparty to comply with the subpoena, though in doing so the court *must* protect a nonparty 'from significant expense resulting from compliance.'" *Washington v. Follin*, No. 4:14-cv-00416-RBH-KDW, 2016 WL 1614166, at *7 (D.S.C. 22 Apr. 2016) (emphasis original) (quoting Fed. R. Civ. P. 45(d)(2)(B)). A court must quash or modify a subpoena that fails to allow a reasonable time to reply, requires disclosure of privileged or protected matter, or imposes an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(i), (iii), (iv); *see also Robinson v. Equifax*, No. 4:10-CV-84-BO, 2011 WL 285232, at *4 (E.D.N.C. 26 Jan. 2011); *In re Subpoena to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008) ("A subpoena imposes an undue burden when a subpoena is overbroad."). In addition, the court may quash a subpoena if it, among other things, compels disclosure of a trade secret or other confidential information. Fed. R. Civ. P. 45(d)(3)(B)(i); *see also Sec. & Exchange Comm. v. White*, No. 8:11-944-HMH, 2011 WL 1544202, at *2 (D.S.C. 22 Apr. 2011).

## III. DISCUSSION

As indicated, by his motion the relator requests an order compelling production of all the documents sought in his subpoena. While expressing a willingness to produce documents that are properly discoverable from it, DHB argues that the relator's subpoena is so flawed that it should be quashed or modified. The court largely agrees with DHB.

As noted, the subpoena seeks an extensive range of documents. Specifically, it sets out 16 separate requests for documents, not including subparts:

4

1. All documents related to PCS reimbursement submitted by, or on behalf of, any of the Meridian Defendants [*i.e.*, defendants] from 2010 to present.
2. All supporting documentation for PCS reimbursement claims from the Meridian Defendants from 2010 to present.
3. All documents related to PCS reimbursement claims submitted by, or on behalf of, the Meridian Defendants which were rejected or otherwise not paid from 2010 to present.
4. Documents which identify the SCU Medicaid beneficiaries at the Meridian Defendants' facilities from 2010 to present.
5. Independent assessments of PCS needs of SCU Medicaid beneficiaries at Meridian Defendants' facilities.
6. Documents, correspondence, or training materials among, between, or including DMA, VieBridge, Inc., or Liberty Healthcare Corporation of NC regarding PCS reimbursement or PCS reimbursement claims.
7. All correspondence or other communications between the Meridian Defendants and DMA from 2010 to present regarding the provision of PCS or the submission of claims for reimbursement for PCS.
8. Meridian Defendants SCU total census reports and Medicaid census reports (daily, monthly, and annually) from 2010 to present.
9. Independent assessment documents, referrals, and notification letters from 2010 to present.
10. Forms, reports, surveys, and any other documents DMA required by DMA to submit regarding SCU Medicaid beneficiaries, SCU PCS staffing, PCS reimbursement and payment from 2010 to present.
11. DMA's documents regarding Meridian Defendants' management of SCUs from 2010 to present.
12. All documents transmitted to Meridian Defendants from 2010 to present regarding:
    a. SCU staffing,
    b. SCU PCS services performed,
    c. SCU Medicaid beneficiaries,
    d. Correspondence regarding SCU PCS, and
    e. SCU-related budget issues.
13. Licensing applications for Meridian Defendants, including any documents relied upon for licensing applications.
14. Provider certifications related to PCS or SCU services at Meridian Defendants' facilities, including any documents relied upon for provider certification.
15. Internal quality improvement program attestations for Meridian Defendants, including any documents relied upon for QI program attestations.
16. Meridian Defendants' SCU Medicaid Beneficiary files, including but not limited to:
    a. All documents and information submitted to NCTracks;

5

> b. Activities of Daily Living (ADL) self-performance capacity determinations;
> c. DMA form 3051 request for independent assessment for PCS;
> d. Retroactive prior approval for PCS;
> e. Reconsideration request for initial authorization for PCS;
> f. Initial independent assessment PCS documentation;
> g. Physician referral and attestation when applicable;
> h. ACH PASRR screen preadmission screening and resident review;
> i. Independent assessment from the IAE;
> j. Service authorization for a specified number of PCS hours/monthly;
> k. PCS service plan;
> l. Beneficiary plan of care;
> m. Adult care home FL-2 (DMA 372-124);
> n. Adult care home personal care physician authorization and care plan (DMA 3050R) from 2010 to present;
> o. Beneficiary daily task sheets/form and completed forms documentation regarding all aide tasks listed in the PCS service plan that are performed and provided, including:
>> i. the date of service and tasks provided,
>> ii. aide providing the service,
>> iii. all deviations from the service plan including date care tasks not performed, and
>> iv. reason(s) tasks were not performed.

Subp. 6-8. The focus of DHB's response and objections to the subpoena is that the document requests are overbroad and that compliance with them would impose an undue burden on it. *See* Resp. & Objections 2-3.

Subject to its objections, DHB indicated that it would produce the documents sought in Requests Nos. 6, 11, and 15, and was checking to determine whether it had the reports sought in Request No. 8, implying that it would produce them if found. Resp. & Objections 4.[1] As of the time the motion to compel was filed, no such documents had been produced in response to these requests. *See* Rel.'s Mem. 5. To the extent that DHB has not produced the documents it indicated

---

[1] Page citations to this document are to the page numbers assigned by the court's CM/ECF electronic filing system.

6

expressly it would produce in response to Requests Nos. 6, 11, and 15, and impliedly in response to Request No. 8, DHB shall do so no later than 15 November 2018.

DHB does not state an intention to produce documents in response to any of the other requests, but relies entirely on its objections to them. DHB has supported its objections with an affidavit from Sabrena Lea, its Associate Director for Long Term Services and Supports. Lea Aff. (D.E. 74-5). In her affidavit, Lea indicates that responding to the requests as written would be an undue burden on DHB. *Id.* ¶ 12. She advises that the document requests relating to 49 defendants, some of which contain no date range at all and others which seek documents for an 8-year time frame, would be "exceedingly difficult" to comply with, *id.* ¶ 7, and could encompass services provided to as many as 7,500 individuals, *id.* ¶ 8. She indicates that "[a]s a conservative estimate, this would entail producing millions of pages of documents." *Id.* at 8.

The court finds Lea's concerns compelling, particularly because DHB is a nonparty to this litigation. *Allegood v. Graham*, No. 5:17-CV-282-FL, 2018 WL 4305766, at *3 (E.D.N.C. 10 Sept. 2018) ("'In the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" (quoting *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005))); *Virginia Dep't of Corr. v. Jordan*, No. CV 3:17MC02, 2017 WL 5075252, at *5 (E.D. Va. 3 Nov. 2017) ("Therefore, in assessing whether a subpoena imposes an undue burden '[c]ourts should balance the need for discovery against the burden imposed on the person ordered to produce documents. Non-party status is one of the factors the court uses in weighing the burden of imposing discovery. An undue burden is identified by looking at factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed.'"

(quoting *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452–53 (D.D.C. 2002))); *In re: Am. Med. Sys., Inc.*, No. 2325, 2016 WL 6666890, at *5 (S.D.W. Va. 10 Nov. 2016) ("Indeed, Fed. R. Civ. P. 45(d) places an affirmative duty on a party seeking information from a non-party to take reasonable steps to avoid subjecting the non-party to undue burden and expense, and the failure to do so may justify an award of sanctions against the party.").

DHB's concerns are particularly persuasive in light of the assertion that many, if not all, of the documents could also be obtained from defendants. *Sherrill v. DIO Transp., Inc.*, 317 F.R.D. 609, 615 (D.S.C. 2016) ("'If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness.'" (quoting 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2204 at 365 (2nd ed. 1994))); *Medical Components, Inc v. Classic Medical, Inc.*, 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002) ("The current generally prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs."). While the court is sympathetic to the relator's argument that the information submitted by defendants to DHB goes to the core of his claims, it cannot countenance requiring a nonparty to produce a multitude of documents without the requesting party's first attempting to obtain such documents from other parties that likely have copies of the documents. *See* Fed. R. Civ. P. 26(d)(3) (recognizing court's authority to direct the sequence of discovery). Moreover, there are other steps that should be taken before the relator serves any further subpoena on DHB in order to address additional issues that surfaced in the proceedings to date on the instant subpoena.

8

Accordingly, before the relator issues any further subpoena to DHB, he shall seek the documents in question from defendants. If after obtaining the production from defendants the relator still has a need for documents from DHB (*e.g.*, to obtain discoverable documents defendants were unable to produce), he may seek them from DHB through an appropriately tailored and targeted subpoena.

In addition, before the relator issues any further subpoena to DHB, the relator shall confer with DHB as to whether he must provide DHB with the identification, including MID numbers, of all the Medicaid beneficiaries, if any, as to whom the subpoena seeks documents in order to enable DHB to identify the documents sought and to avoid placing an undue burden on DHB. Conferral on this issue is necessary because in its response and objections, DHB asserted that it was unable to respond to the majority of the requests until the relator supplied it with an exhaustive list of all Medicaid beneficiaries, including their MID numbers, who resided in defendants' facilities in the designated time period. Resp. & Objections 1. The relator countered that in the past he has requested and received Medicaid PCS reimbursement claims and payment reports without the provision of MID numbers, and that in the initial discussions between the relator and DHB, DHB never indicated that the provision of such numbers was necessary. Rel.'s Mem. 5-7.

Lastly, prior to issuance any further subpoena, to the extent that the subpoena seeks the production of highly sensitive protected health information that is not encompassed by the protective order already entered in this case (D.E. 68), the relator and DHB shall confer in good faith and submit to the court a proposed protective order that provides appropriate protection for such health information.

## IV. CONCLUSION

For the reasons stated and on the terms set forth above, IT IS ORDERED that the relator's motion to compel (D.E. 70) is ALLOWED as to Requests Nos. 6, 8, 11, and 15 in the instant subpoena, but DENIED without prejudice as to the other document requests in the subpoena, to which DHB need not make any further response.

SO ORDERED, this 1st day of November 2018.

James E. Gates
United States Magistrate Judge

10