IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-410-BO

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF NORTH CAROLINA, EX REL. STEPHEN GUGENHEIM, <br><br> Plaintiff, <br><br> v. <br><br> MERIDIAN SENIOR LIVING, LLC, *et al.*, <br><br> Defendants. | ORDER |

This cause comes before the Court on relator's motion for partial summary judgment and defendants' motion for summary judgment. The appropriate responses and replies have been filed, and a hearing on the matters was held before the undersigned on February 27, 2020, at Raleigh, North Carolina. In this posture, the motions are ripe for ruling and, for the reasons that follow, defendants' motion is granted and relator's motion is denied.

## BACKGROUND

Relator Stephen Gugenheim brought this action under the federal False Claims Act (FCA), 31 U.S.C. § 3729, *et seq.*, as amended, and the North Carolina False Claims Act (NCFCA), N.C. Gen. Stat. § 1-605, *et seq.*, to recover damages and civil penalties on behalf of the United States and the State of North Carolina for violations of the FCA and NCFCA with respect to submissions of and reimbursements for false claims to North Carolina's Medicaid Program,[1] specifically for the provision of personal care services.[2] Personal care services, or PCS, under the North Carolina Medicaid Program include a range of hands-on assistance to

---

[1] Hereinafter North Carolina Medicaid or Medicaid.
[2] The United States and the State of North Carolina have declined to intervene in this action. [DE 21]

enable individuals to accomplish tasks they are unable to perform themselves, typically the activities of bathing, eating, toileting, and mobility. Forty-five of the named defendants are operators of separate adult care homes that provide PCS to residents; these adult care homes have many residents who suffer from cognitive and memory impairments and reside in special care units which provide greater security and supervision. Defendant Affinity Living Group, LLC manages the adult care home defendants and defendant Meridian Senior Living, LLC, provided management services to the individual adult care homes before February 2016. Defendant Charles E. Trefzger, Jr., is the CEO of Affinity Living Group.

Relator alleges that the named defendants, acting in concert from at least 2010 and past the date of the filing of the complaint, and acting "with actual knowledge of the information, and/or with deliberate ignorance and/or reckless disregard for the truth or falsity of the information, and/or with intention to deceive the government[,] intentionally submitted false claims for reimbursement to N.C. Medicaid for [PCS] provided to residents of Defendants' Special Care Units and received reimbursements therefrom." [DE 26] Amd. Compl. ¶ 2. Relator alleges that the defendants' staffing patterns and scheduling practices make it impossible for defendants to have rendered the required time units of PCS to their qualified Medicaid special care unit residents, or, alternatively, to provide for and meet the PCS needs of the qualified Medicaid special care unit residents as assessed. *Id.* ¶ 5. Relator alleges that defendants knowingly failed to render the PCS as claimed and reimbursed by North Carolina Medicaid, and that defendants cannot support their special care unit PCS claims as submitted to and reimbursed by Medicaid by any unit of hourly or daily measurement. *Id.* ¶ 125. Relator alleges that "[a]t no time did the Defendants' [special care unit] staff time correspond with or come near to meeting the staff time necessary to provide the PCS required to support a Medicaid

2

authorized PCS claim for reimbursement at the maximum allowable reimbursement amount of services." *Id.* ¶ 127. The allegations in relator's complaint are based on calculations comparing staff time available and the number of hours of PCS claimed.

On March 23, 2018, the Court granted in part and denied in part defendants' motion to dismiss the amended complaint. Relator's conspiracy claims and claim under 31 U.S.C. § 3729(a)(1)(B) for knowingly making, using, or causing to be made or used a false record were dismissed. [DE 55]. Remaining for adjudication are relator's claims for knowing presentation of false or fraudulent claims in violation of 31 U.S.C. § 37(a)(1)(A) (count one) and his claims under the NCFCA.

## DISCUSSION

At the outset, the Court ALLOWS the motion by the North Carolina Senior Living Association for leave to file an amicus curiae brief in support of defendants, [DE 149], and the Court has considered the amicus curiae brief at [DE 149-2]. For good cause shown, the motions for extension of time [DE 141 & 159] are also GRANTED, as is relator's motion to seal [DE 131].

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving

party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

I.  Defendants' motion for summary judgment.

Defendants have moved for summary judgment in their favor on all of relator's remaining claims. The following facts are derived from the undisputed facts proffered by defendants. *See* [DE 148; 167].

The North Carolina Department of Health and Human Services, Division of Health Benefits oversees the North Carolina Medicaid Program, including the PCS benefit. Prior to January 1, 2013, there was no specific North Carolina Medicaid policy governing the provision of PCS in adult care homes, and adult care homes billed for PCS on a single per diem rate per resident. In contrast, PCS provided by in-home care providers prior to January 1, 2013, was governed by North Carolina Clinical Policy 3C (Policy 3C). On January 1, 2013, North Carolina Medicaid and Health Choice Clinical Coverage Policy 3L (Policy 3L) was implemented as a result of a federal requirement mandating that PCS services be provided in both adult care homes

and in-home settings under the same policy. Policy 3L defines PCS as a medical benefit provided to beneficiaries who "have a medical condition, disability, or cognitive impairment and demonstrate unmet needs for hands-on assistance with qualifying activities of daily living: bathing, dressing, mobility, toileting, and eating." [DE 150] Defs. App'x. 349.[3] Policy 3L is applicable to PCS services provided in adult care homes as well as in-home settings, and most of the provisions of Policy 3C which had been applicable only to in-home PCS were carried forward into Policy 3L.

In order to qualify for Medicaid's PCS benefit, an independent assessment is performed annually to identify or reassess a beneficiary's overall ability to perform each activity of daily living. A beneficiary who is totally able to perform an activity of daily living or needs only verbal cueing or supervision will not qualify for the PCS benefit. A beneficiary who can perform the activity with limited assistance or extensive assistance, or is unable to perform the activity at all, will qualify for the PCS benefit. The specific tasks a beneficiary needs assistance with for each activity of daily living are identified, as is the level of assistance needed for those tasks and the number of days in a week on which the beneficiary will require assistance with those tasks.

Once the assessment is performed and the eligibility criteria are satisfied, the amount of monthly authorized hours for each activity of daily living is calculated using an algorithm which is based upon Policy 3L's service level determination chart. The service level determination chart lists, for example, that thirty-five minutes per day are authorized for beneficiaries who need limited assistance with bathing, fifty minutes are authorized for beneficiaries needing extensive assistance with bathing, and sixty minutes are authorized for beneficiaries who are

---

[3] Citations to defendants' appendix in support of their statement of material facts are to the appendix page number.

fully dependent on assistance with bathing. *See* Defs. App'x 907. For an individual beneficiary, the algorithm considers which activities of daily living the beneficiary needs assistance with as well as the frequency assistance is needed to calculate the number of hours per month that are approved for PCS. Time is also included in the authorization for medication assistance, meal preparation, and additional time based on environmental or medical conditions.

After a beneficiary is approved for a certain number of PCS hours per month, the PCS provider develops a service plan to schedule the delivery of the PCS benefit. This service plan includes each activity of daily living and the beneficiary's assistance level, as well as all sub-tasks within each activity of daily living, the number of times per day or week they must be performed, and the average daily PCS hours allocated based upon a formula applied to the total number of monthly hours that has been approved. When Policy 3L first went into effect, the maximum number of authorized PCS hours for an individual beneficiary was eighty hours per month, even if the total number of assessed hours was more than eighty. Policy 3L was later amended to authorize an additional fifty hours per month for beneficiaries who meet certain criteria, such as having a memory impairment which requires increased supervision. Thus, the maximum total number of monthly PCS hours authorized for Medicaid reimbursement is 130.

In order to be covered by Medicaid, PCS must be documented as completed, and Policy 3L requires providers to document all tasks in a beneficiary's service plan at the frequency indicated that are performed by PCS aides. The requirements for aide documentation include, at minimum, the date of service, the aide tasks provided, and the aide providing the service. Under Policy 3C, which had applied only to providers of in-home PCS, the actual time spent by a provider was recorded and submitted for reimbursement in units reflecting fifteen minutes of actual time spent. The fifteen minute billing unit was continued under Policy 3L. Policy 3L

6

also sets out the minimum qualifications and training required for PCS aides, but North Carolina's Department of Health and Human Services, Division of Health Service Regulation (DHSR), regulates the staffing of adult care homes, including the staffing ratio.

After Policy 3L, which does not itself address billing practices, was implemented, third-party guidance on compliance with Policy 3L was published after being approved by North Carolina Medicaid. This guidance states that providers need not keep track of the time spent providing PCS. This is supported both by the language of Policy 3L and the deposition testimony of North Carolina Medicaid officials, including Cassandra McFadden, Sabrena Lea, and Patrick Piggot.[4] *See* McFadden Dep. 178-79, Defs. App'x 86-87; Lea Dep. 111, Defs. App'x 136; Piggot Dep. 30, Defs. App'x 109. The guidance further states that adult care home providers do not need to deduct time from PCS hours if all tasks associated with that activity of daily living could not be completed, so long as one of the tasks could be completed. Again to use the example of bathing, if a provider is able to complete one of ten tasks associated with bathing, the provider can bill Medicaid for the entire time allotted for the bathing activity of daily living. McFadden Dep., Defs. App'x 75.

Defendants have a uniform method of billing Medicaid for PCS, which includes conducting a daily census of residents and billing for the daily allocated amount of PCS hours for a beneficiary counted as present on a particular day. North Carolina Medicaid has never refused to pay any PCS claim submitted by defendants based on the manner in which the PCS was billed.

*The False Claims Act*

---

[4] Cassandra McFadden is the current Program Operations Manager responsible for overseeing the PCS program; Sabrena Lea is the current Associate Director for Long-term Services and Support and oversees services including PCS; Patrick Piggot is a current Associate Director for the North Carolina Medicaid Office of Compliance and Program Integrity (OCPI) and is responsible for pre- and post-payment audits of claims for PCS reimbursement.

To prevail on his FCA claims, relator must demonstrate that defendants made a false statement or engaged in a fraudulent course of conduct; that the statement or conduct was made or conducted with the requisite scienter; that the statement or conduct was material; and that the statement or conduct caused the government to pay money or forfeit money due and owing. *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003) (*Harrison II*). At the summary judgment stage, the relator "must adduce evidence on each element of [his] FCA claims that would be sufficient, if believed, to satisfy the burden of proof at trial." *United States v. Prince*, No. 1:08CV1244, 2011 WL 13092084, at *2 (E.D. Va. June 13, 2011). Pursuant to N.C.G.S. § 1-616(c), the North Carolina False Claims Act is to be interpreted consistently with the federal False Claims Act. N.C. Gen. Stat. § 1-616(c). Accordingly, the Court's discussion of the False Claims Act applies to relator's federal and state law claims.

Even construing the facts in the light most favorable to relator, relator has not proffered evidence which, if believed, would show that the bills submitted by defendants to North Carolina Medicaid for PCS reimbursement were materially false or made with the requisite scienter.

"In order for a false statement to be actionable under . . . the FCA, it must be made as part of a false or fraudulent claim." *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018). The false statement must also be material, meaning it must have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016) (*Escobar*) (citations omitted).

The evidence submitted by defendants demonstrates that North Carolina Medicaid officials and North Carolina Medicaid sanctioned guidance to adult care homes expressly do not

require adult care homes to track the time spent delivering PCS to their residents. Each North Carolina Medicaid staff member who testified recognized that, while the requirement that PCS be billed in fifteen minute increments was carried forward from Policy 3C to Policy 3L, the practical differences between adult care homes and in-home care providers caused Medicaid officials to construe the two settings differently: "folks in a primary private setting – they would be billing for . . . their time in, their time out. When I think about an adult care home, I'm thinking about the fact that they completed the ADL." McFadden Dep., Defs. App'x 84. This comports with Policy 3L § 4.2.2, which states that the provision of PCS will not be covered when, *inter alia*, PCS is not documented as completed or not completed on the date the service was billed. Defs. App'x 692.

Thus, the payment for PCS services in the adult care home setting is based on the completion of the service, not on the time spent performing the service. For example, if a beneficiary has been approved for extensive assistance with dressing, which is listed as thirty-five minutes per day of assistance in the service level determination chart, a PCS provider in an adult care home would be able to bill for thirty-five minutes of PCS if the dressing has been completed, whether it took the aide providing assistance twenty minutes or forty minutes that day. *See* McFadden Dep., Defs. App'x 76-77. Moreover, even if an adult care home PCS aide is able to complete just one of the tasks associated with an activity of daily living, the adult care home provider is permitted to bill for the full time allotted for that activity of daily living. *Id.* 73-75. To rely on the example used at Ms. McFadden's deposition, if an aide were to assist a PCS beneficiary with brushing her teeth, just one of ten tasks associated with the bathing activity of daily living, the provider would be permitted to bill North Carolina Medicaid for the full

9

amount of time allotted to the activity of bathing – between thirty-five and sixty minutes per day depending on the assistance level required. Defs. App'x 75.

Relator's theory to support his False Claims Act claims is that defendants could not have provided all of the PCS that they billed for because the PCS hours billed were greater than the staff labor hours at their facilities. But, as discussed above, official North Carolina Medicaid guidance explains that PCS services provided in adult care home care settings are billed at the completion of the task, which may take all or a fraction of the time authorized for that particular activity of daily living. Indeed, while adult care home providers must bill for PCS in fifteen minutes increments, North Carolina Medicaid does not "mandate that [] care be delivered in fifteen minute increments." Lea Dep., Defs. App'x 127-28. In other words, completion of tasks is considered a proxy for time in adult care homes, due to the fact that residents are in that setting twenty-four hours a day, seven days per week. *Id.*, Defs. App'x 123. This is in contrast to the provision of PCS in an in-home setting, where the aide is present and providing services to the beneficiary for only a finite period of time. *Id.* at 124.

This is further supported by the billing request forms, which do not require adult care homes to show the time spent providing PCS in order to be reimbursed. Because requests for PCS reimbursement do not require a provider to demonstrate the time spent providing PCS, it follows that the actual amount of time spent providing PCS is immaterial to the request for reimbursement for PCS services. *See Escobar*, 136 S. Ct. at 2003 (materiality standard is demanding). The record testimony demonstrates that what is material in the adult care home setting is that the PCS was completed.

In arguing against defendants' motion for summary judgment, relator advances a theory of implied false certification liability. Implied false certification liability exists where there is "a

request for payment under a contract where the contractor withheld information about its noncompliance with material contractual requirements." *United States v. Triple Canopy, Inc.*, 857 F.3d 174, 178 n.3 (4th Cir. 2017) (internal quotation marks omitted). Here, relator contends that defendants impliedly, and falsely, certified to Medicaid that they had provided the requisite PCS by submitting claims for units of PCS when they may not have actually spent fifteen minutes providing the unit of PCS and further impliedly certifying compliance with licensing regulations which require special care units to staff in sufficient numbers to meet the needs of residents. [DE 166 at 5].

"When . . a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided." *Escobar*, 136 S. Ct. at 1999. Two conditions must be satisfied to succeed on an FCA claim under the implied false certification theory: first, the claim must request payment and make a specific representation about the goods or services provided and, second, the failure to disclose noncompliance with material regulatory or statutory requirements must make such representations "misleading half-truths." *Id.* at 2001.

Policy 3L is silent in regard to the staffing requirements of adult care homes. Although Policy 3L discusses PCS as providing for the unmet needs of qualifying Medicaid beneficiaries, nowhere does it mandate certain staffing ratios in order to fill that unmet need, and it does not require that adult care homes certify that their staffing ratios are sufficient to provide the PCS claimed. Rather, only completed PCS may be billed by providers to Medicaid for reimbursement. True, the FCA would prohibit a system to bill Medicaid for PCS when no PCS was provided. But relator has not proffered any evidence in opposition to defendants' motion

11

for summary judgment that would show a fraudulent course of conduct by defendants to bill for PCS when no PCS was provided. Rather, relator's claim rests on a theory based upon defendants' staffing plans and PCS claims, but at this stage of the proceeding that is simply not enough to create a genuine issue of material fact for trial.

Realtor's implied certification theory also rests on his belief that with every bill for PCS reimbursement submitted to North Carolina Medicaid, defendants implied certified, not only that they had provided the PCS for which they were seeking reimbursement, but also that they were able to do so because they had the proper staffing ratio. Staffing levels of adult care homes is a regulatory matter governed by DHSR, not North Carolina Medicaid or OCPI. Lea Dep., Def. App'x 130; Piggott Dep., Defs. App'x 108. When adult care homes are audited for PCS compliance, certain staffing issues are reviewed, including whether the staff is properly trained and whether the staff is qualified, but proper staffing levels is not an issue in the audit, nor do auditors compare labor time with PCS claims. Piggott Dep., Defs. App'x 107-112. "[T]he correction of regulatory problems is a worthy goal, but [it] is 'not actionable under the FCA in the absence of *actual fraudulent conduct*.'" *U.S. ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 702 (4th Cir. 2014) (citation omitted).

Relator has also failed to create a genuine issue of material fact as to scienter. There has been no evidence proffered that defendants had actual knowledge that the claims they were submitting for reimbursement were false. Rather, relator contends that defendants acted with deliberate indifference or reckless disregard of the falsity of the information submitted to Medicaid. 31 U.S.C. § 3729(b).

Policy 3L does require PCS providers to report billing using one unit of service as equaling fifteen minutes. But Medicaid officials have recognized since the inception of Policy

12

3L that "it's easy to apply time-based billing units in an in-home setting, and it's not easy to apply it in [an adult care home]." Feasel Dep., Defs. App'x 45; 46-47. Put another way, Policy 3L includes "a billing method that works well in an in-home care setting, and does not work well in an adult care home setting." *Id.* 47. In light of this difficulty, North Carolina Medicaid officials and official guidance have consistently told adult care home providers that they should bill Medicaid for PCS reimbursement based upon the completion of the task, not based on the amount of time it took to complete the task.

"[T]he government's knowledge of the facts underlying an allegedly false record or statement can negate the scienter required for an FCA violation." *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir. 2002). Here, North Carolina Medicaid plainly had knowledge that defendants were not tracking the amount of time spent providing PCS as their own official guidance instructed adult care home providers not to do so. *See also U.S. ex rel. Werner v. Fuentez Sys. Concepts, Inc.*, 319 F. Supp. 2d 682, 685 (N.D.W. Va.) (scienter negated where Coast Guard officials instructed defendants to bill in a particular manner).

Relator argues that nothing in Policy 3L or North Carolina Medicaid guidance instructed defendants to submit claims for unavailable staff time. But, as discussed above, adult care homes are not required to provide care in fifteen minute increments, and may bill for completed PCS, irrespective of the amount of time it took to complete the task. North Carolina Medicaid guidance further supports that where a beneficiary has been approved for PCS, the same amount of time is approved per day whether or not one of the associated tasks or seven of the associated tasks are scheduled to be completed on a particular day.

13

Case 5:16-cv-00410-BO   Document 173   Filed 04/21/20   Page 13 of 18

Defendants have been audited a number of times by state and federal regulators. *See* [DE 152], Stahlschmidt Decl. ¶ 13. Despite these audits, defendants have not been found deficient due to the absence of maintaining records of time spent providing PCS or a failure to spend sufficient time providing PCS. *Id.* ¶ 30. Defendants' billing practices have been examined, including their practice to bill for the total authorized time for PCS based upon their census, and defendants' billing methodology was generated based upon guidance received from North Carolina Medicaid. *See* [DE 153], Coffey Decl. ¶¶ 8, 9. According to testimony submitted by defendants, this is the general practice among adult care homes in North Carolina. [DE 154] O'Neill Decl. ¶ 11. Relator has not come forward with evidence which would create a genuine issue of material fact that defendants acted with reckless disregard of the falsity of the information they provided to Medicaid when seeking reimbursement for PCS.

Because relator has failed to create a genuine issue of material fact as to whether defendants submitted materially false claims to North Carolina Medicaid and whether, if they did so, defendants acted with scienter, defendants are entitled to summary judgment in their favor on relator's claims under the federal and state False Claims Acts.

II. Relator's motion for summary judgment.

Relator seeks entry of partial summary judgment in his favor on the five issues discussed below. In light of the foregoing and, for purposes of relator's motion viewing the facts and inferences in the light most favorable to defendants, relator's motion for summary judgment must be denied.

(1) Relator asks the Court to hold that North Carolina's Medicaid PCS statutory scheme requires time-based (not task-based) billing. As at length discussed above, the summary judgment record reflects that, while Policy 3L requires billing in fifteen minute increments,

North Carolina Medicaid does not interpret Policy 3L as being time-based in the adult care home setting.

(2) Relator asks the Court to hold that North Carolina's Medicaid PCS statutory scheme, plan, and policy requires PCS providers to staff at levels sufficient to support their time-based claims for reimbursement in order to meet the needs of their beneficiaries. Also as discussed above, Policy 3L by its own terms does not specifically address staffing levels.

(3) Relator asks the Court to hold that the independent assessment and resulting authorized hours determine the PCS needs of the beneficiary. Such a holding would contrary to the testimony of the Medicaid officials, who repeatedly described PCS in adult care homes as being based upon completion of the task, not dependent on the time spent completing the task. To hold that the authorized hours of PCS determine the need of the beneficiary would also run counter to the interest of the beneficiary: the beneficiary requires assistance with an activity of daily living such as bathing, dressing, or toileting, and on any given day those needs may be above or below the number of hours authorized by Medicaid. *See, e.g.,* [DE 135-6] McFadden Dep. 6-12, 23-26; Goddard Dep., Def's App'x 161; [DE 137-3] Clampett Dep. at 44-47.

(4) Relator asks the Court to hold that when defendant Affinity has billed for PCS on shifts when PCS was not provided to residents, that constitutes the submission of a false claim under the FCA. Relator has submitted a report which identifies 1,969,461 Medicaid claims reimbursed for which the hours reimbursed exceeded the available PCS special care unit staff hours per day per resident at the defendant facilities. [DE 138-6]. This analysis plainly supports relator's theory of the case, but it does not create an issue of *material* fact because, as discussed above, PCS in adult care homes is not required to be provided in fifteen minute increments, and

adult care home providers are permitted to bill for completion of the task irrespective of the amount of time it took to complete the task.[5]

Relator has also identified thirteen examples from eleven defendant facilities in which ADL task logs indicate that tasks had not been performed, but claims had been submitted to and paid by North Carolina Medicaid. *See* [DE 138-1], Coffey Dep. 94-175. Billing Medicaid for PCS not, in fact, performed could support a claim under the FCA. However, the allegations in this case span more than five years and cover approximately 1300 beneficiaries. First, the FCA requires more than negligence or billing errors to support a claim. *United States ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 452 (4th Cir. 2011); *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010). Rather, there must be knowledge that a claim is false or a knowing and willing disregard of the falsity of the information submitted. Thirteen billing discrepancies is insufficient at the summary judgment stage to create a genuine issue of material fact.

Second, Policy 3L does not require that PCS be billed by shift. Defendants have proffered evidence that if a PCS task was not provided on a particular shift, the task will be completed that day. *See* Webb Dep., Def's. App's 20-21; *see also* [DE 137-3], Clampett Dep. 42-44. Relator has proffered no evidence which would dispute that, because his premise is based upon a comparison of staffing hours to the number of PCS hours provided. As discussed above, however, the way that adult home care providers are permitted to bill Medicaid for PCS reimbursement does not support such a theory.

---

[5] Because the Court finds that relator's expert report does not create a genuine issue of material fact, it need not review the individual billing records which support the expert's conclusions. The motion for leave to file exhibits not capable of being filed electronically [DE 140] is therefore DENIED AS MOOT.

(5) Relator asks the Court to hold that the defendants do not have enough staff time available to provide the fifteen-minute PCS units for which they billed and were reimbursed by Medicaid. Because the Court has held that North Carolina Medicaid's interpretation of its own Policy 3L does not require adult care homes to provide PCS in fifteen minute increments, relator is not entitled to summary judgment in his favor on this issue.

At bottom, in response to defendants' motion for summary judgment, relator has failed to come forward and create genuine issue of material fact as to his False Claims Act claims under either federal or state law. The False Claims Act is not meant to address billing errors nor is it meant to remedy regulatory violations. Defendants' billing practices comport with North Carolina Medicaid's own interpretation of Policy 3L as it applies to adult care homes. Even if defendants' PCS billing practices are improper, defendants' reliance on the official guidance of North Carolina Medicaid negates any scienter which is alleged. Relator's FSA claims, therefore, fail.

## CONCLUSION

Accordingly, for the foregoing reasons, the motion by the North Carolina Senior Living Association for leave to file an amicus curiae brief in support of defendants [DE 149] is ALLOWED. Relator's motion to seal [DE 131] is GRANTED. Relator's motion for partial summary judgment [DE 132] is DENIED. Relator's motion for leave to file exhibits not capable of being filed electronically [DE 140] is DENIED AS MOOT. Relator's motion for extension of time to file substantive motions [DE 141] is GRANTED. Defendants' motion for summary judgment [DE 145] is GRANTED. Defendants' motion for extension of time to file their response to relator's motion for partial summary judgment [DE 159] is GRANTED.

The clerk is DIRECTED to enter judgment in favor of defendants and close the case.

SO ORDERED, this __20__ day of April, 2020.

_Terrence W. Boyle_
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE